# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

LAURA THOMPSON,
o/b/o R.L.T.

       Plaintiff,

v.                            Case No:   2:14-cv-328-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

---

## OPINION AND ORDER

Plaintiff Laura Thompson, on behalf of R.L.T., a minor, appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Supplemental Security Income ("SSI").  For the reasons discussed herein, the decision of the Commissioner is reversed and this matter is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four.

## I.    Issues on Appeal

Plaintiff raises two issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly weighed and evaluated the opinion evidence of record; and (2) whether the ALJ made a proper credibility determination.

## II.    Procedural History and Summary of the ALJ's Decision

On August 31, 2010, Plaintiff filed an application for SSI on behalf of R.L.T. alleging a disability that began on July 28, 2010.  Tr. 115-21.[1]  The Commissioner

---

[1] Citations to the administrative record filed at Doc. 15 are denoted "Tr." followed by

denied Plaintiff's claims initially on October 14, 2010 and upon reconsideration on March 3, 2011.   Tr.  96, 106.   Plaintiff then requested and received a hearing before ALJ M. Dwight Evans on July 18, 2012, during which she was represented by an attorney.   Tr. 41-63, 110-11.   Plaintiff and R.L.T. testified at the hearing.

On November 2, 2012, the ALJ issued a decision finding that R.L.T. was not disabled and denying the claim.   Tr. 29-40.   The ALJ first determined that R.L.T. was a school-aged child on the date the application for SSI was filed and still was a school-aged child at the time the ALJ issued his decision.   Tr. 32.   At step one, the ALJ found that R.L.T. had not engaged in substantial gainful activity at any time relevant to the decision.   *Id.*   At step two, the ALJ determined that R.L.T. had the following severe impairments: attention deficit hyperactive disorder ("ADHD") and a learning disorder.   *Id.*   At step three, the ALJ determined that R.L.T. "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   *Id.*   The ALJ also determined that R.L.T. "does not have an impairment or combination of impairments that functionally equals the listings."   *Id.*

Taking into account what he found to be all relevant evidence, including objective medical evidence and information from Plaintiff, R.L.T., and R.L.T.'s school, the ALJ then determined that R.L.T. "does not have an impairment or combination of impairments that results in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning," as required to

---

the appropriate page number.

functionally meet a listing.   Tr. 32-33, 40; 20 C.F.R. §§ 416.924(d) and 416.926(a). In making this determination, the ALJ assessed R.L.T.'s functioning in six functional equivalence domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-being. Tr. 32-40.

The ALJ found that R.L.T.'s medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's functional equivalence determination.   Tr. 33.   The ALJ determined that R.L.T. has less than marked limitation in acquiring and using information and attending and completing tasks; and no limitation in interacting and relating with others, moving about and manipulating objects, her ability to care for herself, and in her health and physical well-being.   Tr. 35-40.   Accordingly, the ALJ found that R.L.T is not disabled and denied her claim.   Tr. 40.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on April 17, 2014.   Tr. 1-4, 22.   Accordingly, the ALJ's November 2, 2012 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on June 13, 2014.   Doc. 1.

### III.     Social Security Eligibility Act and Standard of Review

An individual under the age of eighteen is disabled for purposes of seeking child SSI benefits when she has a medically determinable physical or mental impairment which results in marked and severe functional limitations and can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(C)(i).   To qualify for benefits, the child claimant must show that: (1) she is not engaging in substantial gainful activity; (2) she has an impairment or combination of impairments that is severe; and (3) her impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment.   20 C.F.R. § 416.924.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

Where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV.   Discussion

### a.   Whether the ALJ properly weighed and evaluated the opinion evidence of record

Plaintiff argues that the ALJ erred by giving more weight to the opinions of Dr. Joseph M. Carver, a non-treating consultant, than to Dr. Candice L. Hurst and Dr. Stanley L. Wiggins, R.L.T.'s treating physicians.   Doc. 18 at 14-23.   Plaintiff also argues that the ALJ failed to properly weigh the opinions of R.L.T.'s teachers.   *Id.* at 23-24.   Plaintiff contends that had the ALJ properly weighed the evidence, he should have found that R.L.T. had at least marked limitations in acquiring and using information and attending and completing tasks.   *Id.* at 1.   The Commissioner asserts that the ALJ did not err in weighing the opinion evidence because, although the extent of the doctor-patient relationship is relevant, it is not determinative.   Doc. 19 at 5.   The Commissioner also states that the ALJ properly rejected the opinions of Dr. Hurst and Dr. Wiggins because their conclusions were inconsistent with

evidence in the record.   *Id.* at 7-8.   Finally, the Commissioner contends that, contrary to Plaintiff's assertion that the ALJ failed to consider and weigh the opinions of R.L.T.'s two teachers, the ALJ discussed both of the opinions in the decisions.   *Id.* at 10.

Under the Regulations, opinions of examining sources usually are given more weight than nonexamining source opinions and are evaluated based upon the degree to which they consider all relevant evidence in the record, including the opinions of other medical sources.   20 C.F.R. §§ 416.927(c)(1), (3).   Generally, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 Fed. Appx. 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); 20 C.F.R. § 416.927(c)(2); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Comm'r of Soc. Sec.*, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996).   "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Phillips*, 357 F.3d at 1240).   By contrast, "because nonexamining sources have no examining or treating relationship with [a plaintiff], the weight [the SSA] will give their opinions will depend on the degree to which they provide supporting explanations."   20 C.F.R. § 416.927(c)(3).   Any medical source opinion may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the

record as a whole.   SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

In this case, the ALJ assigned the highest probative value to the opinions of Dr. Carver, a non-treating consultant.   Tr. 35.   The ALJ justified his findings, stating that Dr. Carver's opinions were consistent with the medical evidence of record.   Tr. 35.   The ALJ found that the opinions of treating physicians Dr. Hurst and Dr. Wiggins were inconsistent with R.L.T.'s school records and treatment records.   Tr. 34.   Upon review of the records, the Court disagrees.

The record reveals that R.L.T. went to Dr. Hurst for testing due to attention problems, learning difficulties, and possible memory impairments.   Tr. 230.   Dr. Hurst performed a series of tests on R.L.T. in May, June and July 2010.   Tr. 230-39.   Based on the tests administered, Dr. Hurst found that R.L.T.'s general cognitive abilities were within the borderline range and that her verbal cognitive abilities were evenly developed and within the average range.   Tr. 230.   Dr. Hurst noted that R.L.T.'s ability to sustain attention, concentrate, and exert mental control was in the borderline range.   Tr. 231.   R.L.T.'s learning ability fell within the borderline.   Tr. 234.   R.L.T. exhibited difficulty with retaining information learned and performs better with semantic and meaningful information.   Tr. 234.   She also performs best with learning visual spatial information that is repetitive and allows time for processing.   Tr. 234.

R.L.T.'s vocabulary and oral comprehension were within average range, and Dr. Hurst did not see any clinical difference between her expressive and receptive

vocabulary abilities as compared with children R.L.T.'s age in the general population. Tr. 235.   Additionally, Dr. Hurst performed various tests to measure R.L.T.'s academic and achievement functions in the areas of mathematics, written language, oral language, and academic knowledge.   Tr. 235.   The test results revealed that "[w]hen compared to others at her grade level, [R.L.T's] academic skills and ability to apply those skills are within average range. [R.L.T.'s] fluency within academic tasks is average.   Her performance is average in reading, basic reading skills, mathematics, math calculation skills, written language, and written expression." Tr. 236.   Dr. Hurst questioned the accuracy of the results, however, stating that she did not feel like these results accurately reflected the challenges R.L.T. exhibited in the academic domain.   Tr. 236.   Accordingly, Dr. Hurst gave R.L.T. a provisional diagnosis of ADHD, inattentive type, and an unspecified learning disorder.   Tr. 238.

Dr. Hurst performed a second round of testing in 2011.   Tr. 364.   Dr. Hurst found that R.L.T.'s performance was inconsistent and revealed discrepancies in her right/and left hemisphere functions and is therefore, evidence of a cognitive disorder. Tr. 369-70.   Dr. Hurst also diagnosed R.L.T. with ADHD, a reading disorder, math disorder and a cognitive disorder.   Tr. 368-69.   Dr. Hurst found that R.L.T. had extreme impairments related to acquiring and using information and marked impairment in caring for herself.   Tr. 333.

Dr. Wiggins routinely treated R.L.T. for her ADHD symptoms from July 26, 2011 through June 18, 2012.   Tr. 307-313.     Upon examination, Dr. Wiggins found that R.L.T. had an attention deficit, was easily distracted and hyperactive.   Tr. 307.

He also found that R.L.T. was unable to concentrate.   *Id.*   Dr. Wiggins diagnosed R.L.T. with ADHD and a probable learning disorder.   Tr. 308.   He prescribed R.L.T. Concerta 54mg to help with her ADHD.   Tr. 309.   During the July 26, 2011 examination, R.L.T.'s mother told Dr. Wiggins that R.L.T.'s short attention span, easy distractibility and poor listening had been improved by the medication.   Tr. 311. On April 16, 2012, Dr. Wiggins treated R.L.T. again.   Tr. 429.   During that visit, R.L.T.'s mother reported to Dr. Wiggins that R.L.T.'s symptoms appeared to be worsening despite the medication.   *Id.*   R.L.T. was struggling academically and had a short attention span, impulsive behavior, poor listening and easy distractibility. *Id.*   Dr. Wiggins changed R.L.T.'s medication to Adderall.   Tr. 430.   On July 11, 2012, Dr. Wiggins also completed a Childhood Disability Evaluation Form.   Tr. 436-37.   Dr. Wiggins opined that R.L.T. had several marked or extreme impairments related to her ability to acquire and use information, attend and complete tasks, care for herself and her health and physical well-being.   Tr. 436.   He also stated that R.L.T. is easily distracted at school, unable to sit still, oblivious to teachers and the classroom.   Tr. 437.   She also interrupts class, has difficulty completing work and rushes through work not following instructions.   *Id.*   She is not comprehending what she is reading and has difficulty completing reading assignments.   *Id.*

Plaintiff contends that the ALJ improperly discredited the opinions of Dr. Hurst and Dr. Wiggins and instead gave great weight to the opinions of Dr. Carver. Doc. 18 at 14-15.   Dr. Carver reviewed the medical records for R.L.T. and found that the evidence supports a diagnosis of ADHD.   Tr. 438.   He noted that the records

indicate that R.L.T. has inconsistent intellectual and academic performance, which can be associated with ADHD or a learning disability.   Tr. 438.   However, he opined that these inconsistencies do not support a diagnosis of a cognitive disorder.   Tr. 438.   Dr. Carver found that the discrepancies between the right and left hemisphere functions are common in children with ADHD and do not suggest a cognitive disorder.   Tr. 439.   Moreover, Dr. Carver found that ADHD and the symptoms of hyperactivity, inattention, and distractibility will produce some symptoms in a classroom setting, and R.L.T.'s school records are typical of those found in children with ADHD.   Tr. 439.   Dr. Carver found nothing in the record to suggest anything other than routine ADHD and routine treatment.   Tr. 439.

Here, it appears the ALJ relied heavily on Dr. Carver's review of the records and opinions, and it is unclear whether the ALJ did an independent review of the record himself.   The ALJ "afforded the highest probative value to the opinion of Dr. Carver, the medical expert."   Tr. 35.   The ALJ stated that he felt the opinion was persuasive because it was consistent with the medical evidence of record.   *Id.*   The ALJ failed to fully assess, however, whether Dr. Carver's opinions were consistent with R.L.T.'s educational records.   Additionally, the ALJ discredited the opinions of Dr. Hurst and Dr. Wiggins as being inconsistent with the school records discussing R.L.T.'s school attendance and participation in age appropriate activities, but it is unclear, as discussed herein, whether he fully compared Dr. Wiggins' and Dr. Hurst's opinions to R.L.T.'s academic records.   *Id.*

"The regulations require the ALJ to evaluate every opinion of record and to explain the weight assigned to opinions from an 'acceptable medical source.'" *McGruder v. Astrue*, 2012 WL 5817938 *6 (N.D. Ga. 2012) (citing 20 C.F.R. §§ 404.1513(d), 4166.927(b), (d)).   While the Court recognizes that R.L.T.'s school records are not an "acceptable medical source," SSR 06-03p requires that the ALJ consider evidence from non-medical sources such as teachers, school counselors, and social workers.   SSR 06-03p.   "Although the Eleventh Circuit has held that the ALJ need not specifically refer to every piece of evidence in the record, *Dyer v. Barnhart*, 395 F.3d. 1206, 1211 (11th Cir. 2005), the ALJ must explain the weight afforded to 'obviously probative exhibits.'" *McGruder*, 2012 WL 5817938 *7 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).   Moreover, "SSR 06-03p further clarifies that this requirement that an ALJ state the weight given to 'obviously probative exhibits' should generally apply to evidence from nonmedical sources such as teachers."   *Id.*

In *McGruder*, the plaintiff, on behalf of the minor claimant, argued that the ALJ erred when he failed to apply the proper legal standards when evaluating the claimant's teacher questionnaires.   *Id.*   The court agreed and reversed and remanded the decision back to the Commissioner.   *Id.*   The court noted that although the ALJ is not required to apply to "other sources" the six factors used for evaluating medical opinions from "acceptable medical sources," the factors represent principles that can apply to the consideration of all opinions including school records. *McGruder*, 2012 WL 5817938 *7 (citing 20 C.F.R. §§ 404.1527(d); 416.927(d)).   These

factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence in support of an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion.   *Id.* (citing SSR 06-03p).

The court in *McGruder* found that the ALJ's opinion was not sufficiently detailed for the court to determine whether the ALJ evaluated the teacher questionnaires in accordance with the factors set forth in SSR 06-03p. *McGruder*, 2012 WL 5817938 *11.   The ALJ did not discuss the serious limitations reported by the teachers and the extensive contacts the claimant had with the teacher over the years.   *Id.* at *8.   The court found that remand was required because "the ALJ's minimal discussion of the teacher questionnaires did not sufficiently explain the weight he placed on those important pieces of evidence, how he considered them, and how they fit into his ultimate determination."   *Id.*   The court found that the ALJ summarily addressed the questionnaires by noting that they reveal "some limitation."   *Id.*   Thus, the court found that it was impossible to determine whether the ALJ's decision was support by substantial evidence and remanded the case back to the Commissioner.   *Id.* at 11.   The court urged the ALJ to evaluate the teacher questionnaires in accordance with the factors in SSR 06-03p and state the weight given to those opinions.   *Id.*

While not binding, the Court finds the *McGruder* decision persuasive here, as the facts are analogous to the facts in the instant case.   Here, R.L.T.'s educational records indicate that she has significant difficulties in an academic setting.   Tr. 160-65, 194, 213-17, 220-25.   Her reports cards consistently show that she is performing below average or failing in reading and math.   Tr. 194, 220-25. R.L.T.'s first grade teacher completed a Teacher Questionnaire and found R.L.T. to be below average in reading, math and written language.   Tr. 158.   The teacher also noted that R.L.T. often does not complete assignments independently, has difficulty completing her work in the allotted time and has difficulty with reading, reading comprehension and fluency and math.   Tr. 159.   R.L.T.'s second grade teacher also completed a teacher questionnaire and noted similar difficulties.   Tr. 276-83.   Although that teacher noted that R.L.T. was performing at grade level in reading, writing and math, she stated that R.L.T. had a serious problem comprehending and doing math problems, expressing ideas in written form, and applying problem solving skills in class discussions.   Tr. 277.   Moreover, R.L.T.'s second grade report card indicates that her performance in reading, math and language arts was unsatisfactory during the three of four quarters during the school year.   Tr. 194.   The report card also evidences that R.L.T. needs improvement with paying attention, completing tasks and working independently.   *Id.*   Finally, the teacher comments state that the second grade skills are difficult for R.L.T. and they are starting to make her more and more frustrated.   *Id.*

The ALJ failed to address any of these issues in his opinion.   The ALJ states that Dr. Carver opined that Dr. Wiggins and Dr. Hurst opinions were "totally inconsistent" with the school records.   Tr. 34.   Nonetheless, he also states, "[t]he medical records reveal that [R.L.T.] is struggling with academic achievement due to ADHD symptoms."   Tr. 35.   The ALJ, however, fails to address whether he independently evaluated the school records and which records he is relying upon.   Not only did he fail to adequately consider the records, he did not state the weight given to these records as suggested by SSR 06-03p. *McGruder*, 2012 WL 5817938 *7.   Accordingly, the Court cannot determine whether the ALJ's decision is support by substantial evidence.   Thus, this case must be reversed and remanded back to the Commissioner to apply the appropriate legal standard and re-weigh all of the evidence, including the school records.   Because, it is unclear whether the ALJ considered the school records or what records were considered, the Court also cannot determine whether the ALJ provided the appropriate weight to the opinions of Dr. Hurst, Dr. Wiggins and Dr. Carver.   Upon remand, the ALJ should re-weigh those opinions in light of the educational records and give sufficient reasons for the weight given.

### b.   Whether the ALJ made a proper credibility determination

Plaintiff alleges that the ALJ failed to provide any credibility analysis as to why Plaintiff's or R.L.T.'s testimonies were not credible.   Doc. 18 at 24.   Defendant responds that although the ALJ's analysis is intertwined with the summary of the record evidence, it was based on substantial evidence.   Doc. 19 at 14.

The regulations require the ALJ to consider specific factors when making credibility determinations.   Those factors include the claimant's daily activities; the location, duration, frequency and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medications; treatment other than medication; and any other measures to reduce pain or other symptoms.   20 C.F.R. § 404.1529(c)(3).

Here, the Court already has determined that remand is warranted because it is unclear whether the ALJ considered all of the record evidence.   Because it is unclear whether the ALJ considered all of the evidence, the Court will direct the Commissioner to reevaluate the credibility of Plaintiff and R.L.T.   Thus, the Court need not further address whether the ALJ made a proper credibility determination.

## V.   Conclusion

Upon review of the record, the undersigned concludes that the ALJ failed to apply the proper legal standards when he failed to address and weigh R.L.T.'s educational records. It is therefore unclear whether his decision is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   The decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g); for the Commissioner to:

    A.  evaluate R.L.T.'s educational records and identify the weight accorded the records, and explain in detail the reasons for making such determinations;

    B.  reevaluate the weight accorded to Dr. Hurst, Dr. Wiggins and Dr. Carver;

    C.  reevaluate the credibility of Plaintiff and R.L.T.;

    D.  make any other determinations consistent with this Opinion and Order, or in the interest of justice.

2.  The Clerk of Court is directed to enter judgment in favor Plaintiff Laura Thompson, o/b/o R.L.T, and close the file.

    **DONE** and **ORDERED** in Fort Myers, Florida on this 22nd day of September, 2015.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record